**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DOMUS DEVELOPMENT LLC,** | ) | |
| **MMA INVESTMENTS LLC, and** | ) | |
| **SONNYMAN, LLC,** | ) | |
| | ) | **Case No. _____** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **JURY DEMAND** |
| **TITAN DEVELOPMENT LLC,** | ) | |
| **WAYNE CRAVENS, JUSTIN CUMBY,** | ) | |
| **and CLINTON ENGINEERING &** | ) | |
| **SURVEYING, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## COMPLAINT

---

Plaintiffs Domus Development LLC ("Domus"), MMA Investments LLC ("MMA"), and

Sonnyman, LLC ("Sonnyman") (collectively, the "Plaintiff Partners"), for their causes of action

against Defendants Titan Development LLC ("Titan"), Wayne Cravens, Justin Cumby (the three

of which are collectively the "Defendant Partners"), and Clinton Engineering & Surveying, LLC

("Clinton Engineering") (the four of which are collectively the "Defendants"), state as follows:

### <u>INTRODUCTION</u>

1.      This case involves a partnership to develop real property in Cookeville, Tennessee

into student housing for Tennessee Technological University ("Tennessee Tech").  In 2017, the

Defendant Partners entered into a partnership with the Plaintiff Partners to rezone and develop the

property.  The Plaintiff Partners have extensive experience developing similar student-housing

projects around the region.  For more than a year, the Plaintiff Partners contributed their money,

labor, and skill toward the partnership's project. For their part, Defendant Titan owns the subject property, and Defendants Cravens and Cumby reside in and purport to have valuable relationships in Cookeville, Tennessee. Based in large part on the efforts and capital of the Plaintiff Partners, the property was successfully rezoned and, as a result, has increased greatly in value. But over the past several months, the Defendant Partners have sought to renege on the deal. Rather than continuing to develop the property as agreed, the Defendant Partners are now attempting to sell the property to a third party over the Plaintiff Partners' objections and without compensating the Plaintiff Partners. In the process, the Defendant Partners, in concert with Defendant Clinton Engineering, have unlawfully distributed to third parties the proprietary plans created and owned by Plaintiff Domus. Further, the Defendant Partners are distributing materials containing Domus's trademark in commerce over Domus's objections in an attempt to secure profits for themselves based on Domus's goodwill and reputation. In sum, now that the Plaintiff Partners have contributed their money, labor, skill, and Domus has contributed its plans, all of which have greatly increased the value of the property, the Defendant Partners are unlawfully seeking to cut the Plaintiff Partners out of the deal in a misguided attempt to enrich themselves. In addition, by disseminating the proprietary plans owned by Domus, all Defendants have misappropriated and converted Domus's trade secrets to Domus's detriment in violation of applicable law.

## PARTIES

2.     Plaintiff Domus Development LLC ("Domus") is a limited liability company that is registered and operating pursuant to the laws of the State of Delaware. Domus's sole member resides in Texas. Domus has substantial experience developing distinctive, national-caliber student housing in multiple markets, including Texas, Missouri, and Arkansas. Domus has

2

developed six such projects to date, with two more projects under construction and one project in pre-development, representing over 4,200 beds and more than $200 million in cost.

3.     Plaintiff MMA Investments LLC ("MMA") is a limited liability company that is registered and operating pursuant to the laws of the State of Delaware.  Both of MMA's two members reside in Texas.  MMA's principal is Mike Atkinson.  Mr. Atkinson has had a 35-year career in real estate and business, including the acquisition, financing, joint venture, and disposition of major commercial properties throughout the United States and Europe, totaling in excess of $1 billion.  Also associated with MMA, though not a member of the LLC, is Bobby Gaylor.  Mr. Gaylor is a successful business person and investment advisor.

4.     Plaintiff Sonnyman, LLC ("Sonnyman") is a limited liability company that is registered and operating pursuant to the laws of the State of Texas.  Sonnyman has two members, one of whom resides in Texas and the other of whom resides in Florida.  Sonnyman is an investment firm that has substantial experience investing in large commercial real-estate developments, including student housing in secondary markets.

5.     Defendant Titan Development LLC ("Titan") is a limited liability company that is registered and operating pursuant to the laws of the State of Tennessee.  Upon information and belief, Titan's sole member is Defendant Justin Cumby, who resides in Tennessee.

6.     Defendant Justin Cumby ("Cumby") is an individual who resides in Cookeville, Putnam County, Tennessee.  Mr. Cumby is the President of Cumby Construction, Inc., a construction company that is headquartered in Cookeville, Tennessee.

7.     Defendant Wayne Cravens ("Cravens") is an individual who resides in Cookeville, Putnam County, Tennessee.  Mr. Cravens is a financial advisor in Cookeville, Tennessee.

3

8.    Defendant Clinton Engineering & Surveying, LLC ("Clinton Engineering") is a limited liability company that is registered and operating pursuant to the laws of the State of Tennessee.  Upon information and belief, the sole member of Clinton Engineering is Phillip Staton, who resides in Cookeville, Putnam County, Tennessee.

## JURISDICTION AND VENUE

9.    The Court has federal-question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 because this complaint asserts multiple causes of action arising under the laws of the United States and the Court has supplemental jurisdiction over all other claims, which form part of the same case or controversy under Article III of U.S. Constitution.

10.    In addition to federal-question jurisdiction, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiffs (all of whom reside in Texas or Florida) and Defendants (all of whom reside in Tennessee), and the amount in controversy exceeds $75,000.

11.    Venue is proper in the Middle District of Tennessee under 28 U.S.C. § 1391 because (i) all Defendants reside in this District, (ii) a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in this District, and (iii) the property that is the subject of the action is situated in this District.

## FACTUAL BACKGROUND

**A.    The Plaintiff Partners toured the property in Cookeville with Cravens and Cumby.**

12.    The Plaintiff Partners have worked together for years to build student-housing projects throughout this part of the country.  For their next project, the Plaintiff Partners identified Tennessee Tech in Cookeville, Tennessee.

4

13.     In or around March 2016, Bobby Gaylor traveled to Cookeville on behalf of MMA and met with Defendant Cravens.  Gaylor informed Cravens that the Plaintiff Partners were interested in acquiring real estate in Cookeville to build student housing.  The parties continued discussions of such a project over the ensuing several months.

14.     In or around August 2016, Edmund Schenecker of Sonnyman, Mike Atkinson of MMA, and Gaylor of MMA traveled to Cookeville and met with Defendants Cravens and Cumby. On this visit, Cravens and Cumby gave the Plaintiff Partners a tour of Cookeville, which included Tennessee Tech's campus and a piece of real property adjacent to Tennessee Tech.

15.     The real property that Cravens and Cumby showed the Plaintiff Partners during this tour consists of two parcels of a total of approximately 11.11 acres and is identified as parcels 001.00 and 002.00 on Tax Map 040I Group D in Cookeville, Putnam County, Tennessee (the "Property").  As described below, the Property was subsequently acquired by Titan and is the subject of this action.

16.     During the Cookeville tour in August 2016, Cravens introduced the Plaintiff Partners to the members of Cookeville's economic development commission as a development group that was interested in building student housing for Tennessee Tech.

17.     Also during the tour in August 2016, Cravens and Cumby represented to the Plaintiff Partners that Cravens and Cumby already owned the Property.  Upon leaving Cookeville, however, the Plaintiff Partners checked the tax maps, which showed that in fact neither Cravens nor Cumby owned the Property.  The Plaintiff Partners then called Cravens to inquire about this misstatement, and he confirmed that neither Cravens nor Cumby owned the Property.

**B.     After Titan purchased the Property, the Defendant Partners approached the Plaintiff Partners about forming a partnership to develop the Property.**

18.     In February 2017, Titan (which is owned by Cumby) acquired the Property for a total purchase price of $1 million.

19.     In March 2017, Gaylor again traveled to Cookeville and met with Cravens about building student housing.  On this trip, Gaylor told Cravens that the Plaintiff Partners remained interested in building student housing on the Property.

20.     A few days later, and after Gaylor had departed Cookeville, Cravens called Gaylor to inquire as to whether the Plaintiff Partners were interested in forming a partnership to build student housing on the Property.  On the call, Cravens told Gaylor that Cravens "did not want to be a developer" and that Cravens and Cumby had not yet hired an architect or a civil engineer.

21.     In April 2017, the Plaintiff Partners traveled to Cookeville to meet with Cravens and Cumby and discuss a potential partnership.  Due to exigent circumstances, however, Cravens was unable to meet at that time, and the parties rescheduled their meeting to May 9, 2017.

**C.     The parties formed a partnership to build student housing on the Property.**

22.     On May 9, 2017, Cravens and Cumby traveled to Fort Worth, Texas to meet with the Plaintiff Partners.  At the meeting, Cravens and Cumby communicated, on behalf of themselves and Titan, that the Defendant Partners desired to form a partnership with the Plaintiff Partners to build student housing on the Property.

23.     At the meeting on May 9, 2017, the Plaintiff Partners and Defendant Partners agreed to and did form a partnership to build student housing on the Property.  The partners agreed on all essential terms of the partnership and agreed as to how each of the partners would contribute its money, labor, and/or skill toward building the project.

6

24.    The partners agreed that Sonnyman would fund the partnership's pre-development costs related to its efforts to rezone the Property for the project.

25.    Similarly, pursuant to the partners' agreement, Titan agreed that the Property would be used as the location for the project to be built by the partnership.

26.    The partners agreed that Domus would lead the partnership's rezoning efforts.

27.    Also on May 9, 2017, the Plaintiff Partners and Defendant Partners agreed to collect all pertinent information about the partners, the Property, and the partnership—including but not limited to biographies, satellite photographs of the Property, information about Tennessee Tech, etc.—to be placed in a financing "pitch book" to attract additional funds for the project.

28.    At the conclusion of the meeting on May 9, 2017, the Plaintiff Partners and the Defendant Partners went to an expensive dinner in downtown Fort Worth, Texas to celebrate the formation of their partnership and their plans to develop the Property.

**D.    The partners began executing on their agreement to develop the Property.**

29.    After the May 9, 2017 meeting, the partners began executing on their agreement to develop the Property.

30.    The partners' immediate plans included, but were not limited to, pre-development activities to prepare the Property for rezoning, preparing the pitch book containing information about the partners and pro forma financial statements, creating architectural and engineering designs and drawings for the planned development, and rezoning the Property.

31.    On the evening of May 9, 2017, Atkinson of MMA emailed some of the partners, including the Defendant Partners, a list of immediate tasks, with a description of which partner would be responsible for which task.

7

32.     On May 11, 2017, Atkinson asked Cravens to provide biographies for Cravens and Cumby to put into the partnership's pitch book. Cravens supplied the biographies.

33.     Later in May 2017, Cravens emailed Atkinson asking for guidance from the partnership's architect as to clearing trees from a portion of the Property. Cravens also informed Atkinson that Cravens and Cumby continued to engage with the city council of Cookeville, Tennessee regarding the partnership's intent and progress. Finally, Cravens requested an update from Atkinson on the partnership's pro forma financial statements and pitch book.

34.     The partners agreed to call the student-housing development the "Aerie."

35.     On or around July 12, 2017, the Plaintiff Partners traveled to Cookeville, Tennessee for a partnership meeting. Cravens, Cumby, Atkinson, Gaylor, and Eric Jakimier of Domus met at the Plaintiff Partners' hotel to discuss the partnership's activities.

36.     Subsequently on that same trip on July 12, 2017, Cravens gave the Plaintiff Partners another tour of Cookeville and the Property, after which the partners continued their meeting in Cravens's office. During this meeting, Domus was tasked with preparing and circulating the development timeline. On July 15, 2017, Domus circulated the development timeline.

37.     Over the summer of 2017, the partners communicated with HFF, Inc. ("HFF"), a provider of capital markets and brokerage services to owners of commercial real estate, regarding additional financing for the Aerie.

38.     In late August 2017, a managing director of HFF traveled to Cookeville from Dallas, Texas to meet with Cravens and learn more about the partnership and the Aerie.

39.     On or about August 30, 2017, the principals of Domus traveled to Cookeville to attend various meetings with the city's economic development staff, planner, and manager on behalf of the partnership. Cravens attended these meetings as well.

8

**E.** **The partners created a pitch book and other materials that expressly confirmed that the partners had entered into a partnership to build the Aerie.**

40.    Using materials contributed by each of the partners, a pitch book was created by HFF on behalf of the partnership for purposes of obtaining financing for the partnership.[1]

41.    The pitch book repeatedly confirmed that the partnership existed to build the Aerie on the Property.  For example:

- The executive summary provides, in its first sentence, that "a partnership led by Domus Development" intended to develop the Property.

- Eric Jakimier of Domus was listed in the pitch book as the "key principal" of the partnership and a "highly-experienced sponsor."

- The pitch book listed "four other key principals/partners" who were "[i]n partnership with Domus":   Atkinson and Gaylor of MMA, Cravens, and Cumby. The pitch book contained detailed biographies for each of these partners.

- The pitch book confirmed that the property "ha[d] already been purchased" by the partnership and that a rezoning request for a planned residential development would be submitted to the City of Cookeville on behalf of the partnership.

42.    The Defendant Partners were sent the pitch book and related materials, contributed information used in the pitch book, and approved of its form and substance.

43.    The Defendant Partners never disclaimed the repeated characterization in the pitch book—which was disseminated broadly for their potential benefit—that the Defendant Partners were partners with the Plaintiff Partners to build the Aerie on the Property.

**F.** **Domus prepared plans for the Aerie that were developed over the course of its many projects and shared these plans with Clinton Engineering.**

44.    Domus has substantial experience developing distinctive, national-caliber student housing in multiple markets, representing over 4,200 beds and more than $200 million in cost.

---

[1]    The pitch book contains confidential and proprietary information; thus, the Plaintiff Partners have elected not to attach it as an exhibit to this complaint.

9

45.     Based on its experience and calling upon its prior plans and designs for similar student-housing projects, Domus prepared plans and designs for the Aerie (the "Aerie Plans").

46.     In creating the Aerie Plans, Domus worked, as it has in the past, with national architecture firm Architecture Demarest, which has offices in Philadelphia and Dallas.

47.     Domus expended time, resources, skill, and money to prepare the Aerie Plans.  The Aerie Plans are proprietary to and owned by Domus and are stamped with its trademark.

48.     In August 2017, Domus met with Clinton Engineering, a local engineering firm in Cookeville, about providing certain limited civil engineering services with respect to the Aerie.

49.     As a result of these discussion, on September 7, 2017, Clinton Engineering submitted a proposal to Domus for Clinton Engineering to provide certain boundary and topographic surveying services for the Aerie in exchange for payment of $6,000 from Domus.  A true and correct copy of Clinton Engineering's survey proposal is attached as **Exhibit A**.

50.     In addition, on September 7, 2017, Clinton Engineering submitted a proposal to Domus for Clinton Engineering to provide certain civil engineering services, including grading and drainage, an erosion control plan, a water line and sewer design, and environmental permits. A true and correct copy of Clinton Engineering's civil engineering proposal is attached as **Exhibit B**.  The total fee for the civil engineering services under this proposal was $41,500.

51.     In order to enable Clinton Engineering to provide these services, Domus gave Clinton Engineering a copy of the Aerie Plans.  Clinton Engineering's civil engineering proposal observed that Clinton Engineering was providing these services "as shown on the conceptual site plan provided by Architecture Demarest."  Clinton Engineering agreed and acknowledged that the Aerie Plans were proprietary to Domus and agreed not to distribute them to anyone.

10

52.     Domus accepted both of Clinton Engineering's proposals, thereby agreeing that Clinton Engineering would provide the services as described in the proposals.

53.     With the knowledge and approval of the Defendant Partners, the Plaintiff Partners paid all of the costs for the services provided by Domus, Clinton Engineering, and other parties in connection with the project.

**G.      The partners presented the Aerie Plans to decisionmakers and neighbors, then the rezoning of the Property was approved pursuant to the Aerie Plans.**

54.     The partners' predevelopment efforts for the Aerie continued into the fall of 2017. On September 6, 2017, Cravens emailed the partners suggesting it was wise to set up a regular call and divide up the partnership tasks pursuant to a punch list.

55.     In mid-October 2017, the principals of Domus traveled to Cookeville on behalf of the partnership to meet with stakeholders for the project, including the president of Tennessee Tech, the members of Cookeville's planning and zoning commission, and the members of Cookeville's city council.  Cravens attended those meetings as well.

56.     At the meetings, Domus presented the Aerie Plans and explained the partnership's plans for the Aerie, drawing on Domus's substantial experience with similar projects.

57.     During the same trip in mid-October 2017, the principals of Domus presented the Aerie Plans at a neighborhood meeting.  In the weeks leading up to the neighborhood meeting, Domus worked with the Defendant Partners, at their request, to communicate with neighbors about the benefits of the Aerie and to answer the neighbors' questions.

58.     At the neighborhood meeting in mid-October 2017, Domus presented on behalf of the partnership.  Domus employed its skills and substantial experience with similar student-housing developments around the region to persuade the Property's neighbors that the Aerie, as described by Domus and shown in the Aerie Plans, was desirable for the neighborhood.

59.     Also at the neighborhood meeting, Cravens presented using PowerPoint slides that integrated Domus's materials (including Domus's trademark) directly into his presentation.  The last portion of Cravens's presentation discussed Domus's past experience and developments.  In effect, Cravens pitched Domus and its experience to the city and neighborhood.

60.     In mid-November 2017, the Defendant Partners notified the Plaintiff Partners that the City of Cookeville had told Cumby and Cravens that the it would provide the partnership a tax abatement and freeze for a period of 5-7 years.

61.     On November 27, 2017,  the principals of Domus traveled to Cookeville again to attend a meeting of the Cookeville Planning Commission on behalf of the partnership.  Cravens and Cumby attended the meeting as well.  At the meeting, Titan (through its principal Cumby), as the Property's owner and on behalf of the partnership, requested that the Property be rezoned from RS10 (single family residential) to RM 14 (multi-family residential) pursuant to the Aerie Plans.

62.     At the same November 27, 2017 meeting, Cravens confirmed that the Property was being developed by a partnership.  In addition, in response to a question from a neighbor about the size of the lights in the Aerie, Jakimier of Domus explained that Domus had never had a complaint about lighting on any of Domus's many other, similar projects.

63.     The Cookeville Planning Commission considered the request to rezone the Property in light of the Aerie Plans and the support from neighbors and other decisionmakers as garnered through the efforts of Domus and other partners.

64.     At the conclusion of the November 27, 2017 meeting, and based in large part on the money, labor, and skill contributed by the Plaintiff Partners, the Cookeville Planning Commission approved the request to rezone the Property from RS10 (single family residential) to

RM 14 (multi-family residential) pursuant to the Aerie Plans. In addition, the Cookeville Planning Commission approved the Aerie Plans as the plans for developing the Property.

65. Subsequently, on or about January 4, 2018, Domus attended the meeting of the Cookeville City Council and obtained final zoning approval.

**H.  After the Property was successfully rezoned pursuant to the Aerie Plans, the Defendant Partners unlawfully sought to cut the Plaintiff Partners out of the deal.**

66. After Domus had created the Aerie Plans for the benefit of the partnership and the Cookeville City Council had approved the rezoning of the Property pursuant to the Aerie Plans, the value of the Property increased substantially—so long as a developer could build the Aerie as shown in Domus's proprietary Aerie Plans.

67. Cognizant of the Property's increased value, the Defendant Partners formulated a scheme to cut the Plaintiff Partners out of the deal by attempting to "shop" the project, as shown in the Aerie Plans, to other potential buyers or developers.

68. As a part of this scheme, however, the Defendant Partners continued to act for some time as though they were continuing to pursue the project with the partnership.

69. In February 2018, for example, while Atkinson of MMA was working on obtaining financing from a bank, Cravens informed Atkinson that Cravens was having discussions with a lender in Cookeville in an attempt to find a better deal and lower interest rate for the financing.

70. And in March 2018, Cravens sent updated financial modeling to Atkinson of MMA as part of continued partnership activities.

71. At the same, however, the Defendant Partners were pursuing the project on their own and without communicating with the Plaintiff Partners.

72. As part of these efforts, the Defendant Partners shared the Aerie Plans, which include Domus's trademark, with prospective buyers and developers.

13

73. In addition, in May 2018, Atkinson of MMA received photographs of grading work that the Defendant Partners had performed on the Property without the Plaintiff Partners' knowledge or approval.

74. In or around June 2018, the Plaintiff Partners learned that the Defendant Partners were attempting to shop the Aerie development to other buyers and developers. For example, the Plaintiff Partners learned that Domus's zoning package was sent to a developer in Nashville, who sent the package to a general contractor in Murfreesboro, Tennessee.

75. In addition, on or about June 14, 2018, Domus was contacted by Architecture Demarest, who had received a call from a developer named David White. White told Architecture Demarest that he intended to purchase the Property and build the Aerie, and he was seeking to hire Architecture Demarest to be the architect for that project.

76. Because Domus's trademarked logo was stamped throughout the materials that the Defendant Partners had given to White, White actually believed that he would be purchasing the Property from Domus, not from Titan or the other Defendant Partners.

77. The Plaintiff Partners have learned of other examples of the Defendant Partners attempting to shop the Aerie to buyers and developers. As a part of those unlawful efforts, the Defendant Partners have distributed the Aerie Plans, which include Domus's trademark and other confidential and proprietary information, to those buyers and developers, who are the Plaintiff Partners' direct competitors.

78. When confronted by the Plaintiff Partners about this conduct, the Defendant Partners refused to perform pursuant to the partnership agreement and, instead, demanded to change the terms of the deal to proceed.

14

79.     The value of the Plaintiff Partners' interest in the partnership and the Property is worth far in excess of $75,000.

**I.     Clinton Engineering unlawfully distributed the Aerie Plans to third parties.**

80.     As mentioned above, when Domus contracted with Clinton Engineering to provide certain surveying and civil-engineering services for the Aerie, Domus gave Clinton Engineering a copy of the Aerie Plans, which were proprietary to Domus.

81.     On December 21, 2017, Domus reminded Clinton Engineering that it had agreed not to disseminate the Aerie Plans, stating:  "Just a gentle reminder that the contract you signed was with Domus.  Not Wayne [Cravens] or Justin [Cumby].  Or Mike [Atkinson] or Edmund [Schenecker] for that matter.  Any attempt by anyone to use any of the work product from that contract without Domus' express written permission will be a breach of that contract."

82.     In response, Phil Staton of Clinton Engineering stated:  "I have no idea of what you are talking about.  I understand that my contract is with Domus."

83.     Nonetheless, Clinton Engineering has proceeded to unlawfully disseminate the Aerie Plans to the Defendant Partners and third parties.

## CAUSES OF ACTION

### Count 1:  Declaratory Judgment (Existence of Partnership)
### (by all Plaintiffs against the Defendant Partners)

84.     Plaintiffs incorporate by reference the allegations set forth above.

85.     A partnership was formed by the Defendant Partners and the Plaintiff Partners to develop the Aerie on the Property.

86.     Yet the Defendant Partners now deny the existence of such a partnership.  Thus, an actual controversy exists regarding whether a partnership was formed by the Defendant Partners and the Plaintiff Partners to develop the Aerie on the Property.

15

87. Under the Tennessee Revised Uniform Partnership Act of 2001 (the "RUPA"), a partnership is an association of two or more persons to carry on as co-owners a business or other undertaking for profit, regardless of whether or not the persons intend to form a partnership. Tenn. Code Ann. §§ 61-1-101(6) and 61-1-202(a).

88. It is not necessary under Tennessee law to have a written partnership agreement because such an agreement may be oral or implied. Tenn. Code Ann. § 61-1-101(8).

89. Partner relations are governed by the partnership agreement, or to the extent the partnership agreement is silent on any issues, by the Revised Uniform Partnership Act of 2001. Tenn. Code Ann. § 61-1-103(a).

90. Under Tennessee law, if the parties' business brings them within the scope of a joint business undertaking for mutual profit—that is to say if they place their money, assets, labor, or skill in commerce with the understanding that profits will be shared between them—the result is a partnership whether or not the parties understood that it would be so.

91. The Plaintiff Partners entered into an agreement, even if orally or implied, to form a partnership with the Defendant Partners to develop the Aerie on the Property.

92. As discussed in detail above, the Plaintiff Partners placed their money, assets, labor, and skill in commerce with the understanding that the profits would be shared between them and the Defendant Partners. In particular, the Plaintiff Partners created the Aerie Plans, funded much of the pre-development expenses for the Property, and successfully persuaded the Property's neighbors, the Cookeville Planning Commission, and Cookeville's city council to rezone the Property pursuant to the Aerie Plans contributed by Plaintiff Partner Domus.

93. In addition, as set forth above, the Defendant Partners introduced the Plaintiff Partners to third parties as their partners, and such third parties believed all such persons were

16

partners. The neighbors, the Cookeville Planning Commission, and Cookeville's city council all understood that the Plaintiff Partners were part of the partnership team that would be developing the Aerie on the Property.

94. Consequently, the Court should order, pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, that a partnership exists between the Defendant Partners and the Plaintiff Partners to develop the Aerie on the Property. In addition, due to the nature of the partnership, the Court should declare that the partnership has an interest in the ownership of the Property.

### Count 2: Breach of Partnership Agreement and/or the RUPA
### (by all Plaintiffs against the Defendant Partners)

95. Plaintiffs incorporate by reference the allegations set forth above.

96. A partnership exists among the Defendant Partners and the Plaintiff Partners to develop the Aerie on the Property.

97. By failing to develop the Aerie on the Property with the Plaintiff Partners but instead seeking to shop the deal to third parties, the Defendant Partners have breached their partnership agreement with the Plaintiff Partners. In the alternative, the Defendant Partners have breached applicable provisions in the Revised Uniform Partnership Act.

98. The Plaintiff Partners have been damaged by the Defendant Partners' breach in an amount to be proven at trial. In addition, the Court should order that the Defendant Partners must comply with the partnership agreement and/or the Revised Uniform Partnership Act.

### Count 3: Declaratory Judgment (Existence and Terms of Joint Venture)
### (in the alternative to Count 1)
### (by all Plaintiffs against the Defendant Partners)

99. Plaintiffs incorporate by reference the allegations set forth above.

100. In the alternative to the formation of a partnership, a joint venture was formed by the Defendant Partners and the Plaintiff Partners to develop the Aerie on the Property.

17

101.    The Defendant Partners deny the existence of a joint venture.  Thus, an actual controversy exists regarding whether or not a joint venture was formed by the Defendant Partners and the Plaintiff Partners to develop the Aerie on the Property.

102.    Even if a partnership does not exist, a joint venture exists.  Under Tennessee law, a joint venture exists where there is common purpose, some manner of agreement among the parties, and an equal right on the part of each to control both the venture as a whole and any relevant instrumentality.

103.    There was a common purpose and some manner of agreement among the Plaintiff Partners and the Defendant Partners to develop the Aerie on the Property.

104.    Consequently, in the alternative to Count 1, *supra*, the Court should order, pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, that a joint venture was formed by the Defendant Partners and the Plaintiff Partners to develop the Aerie on the Property.  In addition, due to the nature of the joint venture, the Court should declare that the joint venture has an interest in the ownership of the Property.

### Count 4:  Breach of Joint Venture Agreement
### (in the alternative to Count 2)
### (by all Plaintiffs against the Defendant Partners)

105.    Plaintiffs incorporate by reference the allegations set forth above.

106.    In the alternative to Count 2, *supra*, a joint venture exists among the Defendant Partners and the Plaintiff Partners to develop the Aerie on the Property.

107.    By failing to develop the Aerie on the Property with the Plaintiff Partners, but instead seeking to shop the deal to third parties, the Defendant Partners have breached their joint venture agreement with the Plaintiff Partners.

108.     The Plaintiff Partners have been damaged by the Defendant Partners' breach in an amount to be proved at trial.  In addition, the Court should order that the Defendant Partners must comply with the joint venture agreement.

## Count 5:  Unjust Enrichment
## (in the alternative to Counts 2 and 4)
## (by all Plaintiffs against the Defendant Partners)

109.     Plaintiffs incorporate by reference the allegations set forth above.

110.     The Plaintiff Partners conferred an enormous benefit upon the Defendant Partners by contributing their time, money, and expertise to increase the value of the Property.

111.     To the extent that the partnership and/or joint venture is not enforced, the Defendant Partners have appreciated and/or will appreciate the value of such benefits.

112.     Under the circumstances, it would be inequitable for the Defendant Partners to retain these benefit without paying the value thereof to the Plaintiff Partners.

113.     Consequently, in the alternative to Counts 2 and 4, *supra*, the Plaintiff Partners seek recovery of their damages for unjust enrichment in an amount to be proved at trial.

## Count 6:  Promissory Estoppel
## (in the alternative to Counts 2 and 4)
## (by all Plaintiffs against the Defendant Partners)

114.     Plaintiffs incorporate by reference the allegations set forth above.

115.     The Defendant Partners made a promise to the Plaintiff Partners that the Defendant Partners would develop the Aerie on the Property with the Plaintiff Partners.

116.     The promise made by the Defendant Partners was unambiguous and clear.

117.     The Plaintiff Partnership reasonably relied upon the Defendant Partners' promise to their detriment by expending time, money, and expertise on the Aerie project.

19

118.    Consequently, in the alternative to Counts 2 and 4, *supra*, the Plaintiff Partners seek recovery of their damages for promissory estoppel in an amount to be proved at trial.

**Count 7:  Misappropriation of Trade Secrets**
**(Federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*)**
**(by Domus against all Defendants)**

119.    Plaintiffs incorporate by reference the allegations set forth above.

120.    Defendants, including Clinton Engineering, have unlawfully misappropriated trade secrets owned by Plaintiff Domus.  In particular, after Domus shared its proprietary Aerie Plans with Defendants under a duty to maintain their secrecy, Defendants have disseminated the Aerie Plans to third parties who are competitors of Domus.

121.    The Aerie Plans are Domus's trade secrets. The Aerie Plans derive independent economic value from not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from their use.  In addition, the Aerie Plans have been subject to efforts that are reasonable under the circumstances to maintain their secrecy.

122.    Defendants misappropriated the Aerie Plans by repeatedly sending them to third-party competitors of Domus.

123.    In particular, Defendants have disclosed the Aerie Plans to third parties without the express or implied consent of Domus, despite the fact that, at the time of disclosure, Defendants knew that they were under a duty to maintain the secrecy of the Aerie Plans.

124.    Domus has been damaged by Defendants' unlawfully misappropriation of its trade secrets in an amount to be proved at trial.  Such damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation or, in the alternative, a reasonable royalty for the unauthorized disclosure.

125.     Defendants' misappropriation of trade secrets has been willful and malicious.  In December 2017, Domus expressly warned Clinton Engineering not to distribute the Aerie Plans to third parties, to which Clinton Engineering responded, "I have no idea of what you are talking about.  I understand that my contract is with Domus."  In June 2018, Domus notified the Defendant Partners to cease and desists distributing the Aerie Plans to third parties.  Yet Defendants have continued to distribute the Aerie Plans to third parties.  Thus, the Plaintiff Partners are entitled to recover exemplary damages equal to twice the actual damages that will be proved at trial.

**Count 8:  Misappropriation of Trade Secrets**
**(Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701 *et seq.*)**
**(by Domus against all Defendants)**

126.     Plaintiffs incorporate by reference the allegations set forth above.

127.     Defendants, including Clinton Engineering, have unlawfully misappropriated trade secrets owned by Plaintiff Domus.  In particular, after Domus shared its proprietary Aerie Plans with Defendants under a duty to maintain their secrecy, Defendants have disseminated the Aerie Plans to third parties who are competitors of Domus.

128.     The Aerie Plans are Domus's trade secrets. The Aerie Plans derive independent economic value from not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from their use.  In addition, the Aerie Plans have been subject to efforts that are reasonable under the circumstances to maintain their secrecy.

129.     Defendants misappropriated the Aerie Plans by repeatedly sending them to third-party competitors of Domus.

130.     In particular, Defendants have disclosed the Aerie Plans to third parties without the express or implied consent of Domus, despite the fact that, at the time of disclosure, Defendants knew that they were under a duty to maintain the secrecy of the Aerie Plans.

21

131.     Domus has been damaged by Defendants' unlawfully misappropriation of the trade secrets in an amount to be proved at trial.  Such damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation or, in the alternative, a reasonable royalty for the unauthorized disclosure.

132.     Defendants' misappropriation of trade secrets has been willful and malicious.  In December 2017, Domus expressly warned Clinton Engineering not to distribute the Aerie Plans to third parties, to which Clinton Engineering responded, "I have no idea of what you are talking about.  I understand that my contract is with Domus."  In June 2018, Domus notified the Defendant Partners to cease and desists distributing the Aerie Plans to third parties.  Yet Defendants have continued to distribute the Aerie Plans to third parties.  Thus, the Plaintiff Partners are entitled to recover exemplary damages equal to twice the actual damages that will be proved at trial.

### Count 9: Federal Trademark Infringement
### (Lanham Act § 43(a), 15 U.S.C. § 1125)
### (by Domus against the Defendant Partners)

133.     Plaintiffs incorporate by reference the allegations set forth above.

134.     Domus has developed a trademark that it uses in connection with its goods and services to identify and distinguish them.  Domus has used such mark since January 2010.

135.     Domus's trademark is famous as defined by 15 U.S.C. § 1125.  The trademark is distinctive and has become associated exclusively with Domus.

136.     Domus has used its trademark in several states and has included its trademark on its portfolios and writings shared throughout the country.  All of Domus's goods and services are provided in connection with its trademark.

137.     Customers recognize Domus's trademark and associate it exclusively with Domus.

138.    Upon information and belief, the Defendant Partners have made use of Domus's trademark without Domus's consent since April 2018 and are still infringing on Domus's trademark by circulating it in commerce without Domus's consent.

139.    The Defendant Partners, in commerce and in connection with the sale of goods and services, have used Domus's trademark in a manner that is likely to cause mistake or deception as to the affiliation, connection, or association with Domus and is likely to cause confusion, mistake, or deception as to the sponsorship and/or approval of services by Domus.

140.    On information and belief, the Defendant Partners' acts are done to secure the profits arising from Domus's goodwill and reputation for themselves.

141.    All of the Defendant Partners' acts and use of Domus's trademark are without Domus's authority or consent, are in violation of Domus's rights in its trademark, and consequently violate 15 U.S.C. § 1125.

142.    The Defendant Partners' infringement of Domus's trademark is causing irreparable damage to Domus's trade, business reputation, goodwill, and profits.

143.    Unless the Defendant Partners are enjoined and restrained from continuing their infringement, Domus will continue to be injured by the ongoing infringement.  Domus is entitled to a preliminary and permanent injunction, as provided for in 15 U.S.C. § 1116, to prevent further violation of its rights in its trademark.

144.    Further, pursuant to 15 U.S.C. § 1117, Domus is entitled to recover the Defendant Partners' profits plus the actual damages that Domus has sustained, as will be proved at trial. Domus is also entitled to recover the costs of this action.

145.    Because the Defendant Partners' misconduct is intentional and willful, Domus should be awarded three times its actual damages.

146.    Because the Defendant Partners' misconduct is intentional and willful, this is an exceptional case and Domus is entitled to an award of attorneys' fees under 15 U.S.C. § 1117.

### Count 10:  Conversion
### (by Domus against all Defendants)

147.    Plaintiffs incorporate by reference the allegations set forth above.

148.    By taking the Aerie Plans and distributing them to third parties without Domus's permission, Defendants appropriated Domus's tangible property for their use and benefit.

149.    Defendants have intentionally exercised dominion over the Aerie Plans that have been converted in defiance of Domus's rights in the Aerie Plans.

150.    Domus and the other Plaintiff Partners have been damaged by Defendants' conversion in an amount to be proved at trial

### Count 11:  Breach of Contract
### (by Domus against Clinton Engineering)

151.    Plaintiffs incorporate by reference the allegations set forth above.

152.    Domus has an enforceable contract with Clinton Engineering to provide certain surveying and civil engineering services.  As a part of that contract, Clinton Engineering agreed not to disseminate the Aerie Plans to third parties.

153.    Clinton Engineering breached its contract with Domus by disseminating the Aerie Plans to third parties.

154.    Domus has been damaged by Clinton Engineering's breach of contract in an amount to be proved at trial.

### Count 12: Civil Conspiracy
### (by all Plaintiffs against all Defendants)

155.    Plaintiffs incorporate by reference the allegations set forth above.

156.    All Defendants have pursued a common design to misappropriate and convert the Aerie Plans from Domus and the Plaintiff Partners.

157.    In addition, the Defendant Partners have pursued a common design to try to cut the Plaintiff Partners out of the deal to develop the Aerie on the Property now that the Property has been successfully rezoned based on the money, skill, and efforts of the Plaintiff Partners.

158.    Defendants have sought to accomplish these designs by concerted action using an unlawful purpose or a lawful purpose by unlawful means.

159.    Defendants have taken numerous overt acts in furtherance of the conspiracy, including but not limited to distributing the Aerie Plans to third parties and shopping the deal to third parties in an attempt to cut the Plaintiff Partners out of the deal.

160.    The Plaintiff Partners have been injured as a result of Defendants' conduct and seek to recover damages in an amount to be proved at trial.

Plaintiffs demand a jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request and pray as follows:

A.    That proper process issue and be served on Defendants and that they be required to appear and answer this complaint within the time prescribed by law;

B.    That the Court declare that a partnership or joint venture exists between the Defendant Partners and the Plaintiff Partners to develop the Aerie on the Property and, further, that the partnership or joint venture has an interest in the ownership of the Property;

25

C.  That the Court issue a lien lis pendens as to the Property in order to ensure that the Defendant Partners do not successfully cut the Plaintiff Partners out of the deal and to protect the partnership's interest in the Property during the pendency of this action;

D.  That the Court find that, by refusing to develop the Aerie on the Property with the Plaintiff Partners, the Defendant Partners have breached the partnership agreement, joint venture agreement, the Revised Uniform Partnership Act, and/or other applicable law and, consequently, order specific performance and/or award damages against the Defendant Partners jointly and severally and in favor of the Plaintiff Partners in an amount to be proved at trial;

E.  That, in the alternative, the Court find that the Defendant Partners are jointly and severally liable to the Plaintiff Partners under the legal doctrines of unjust enrichment and/or promissory estoppel for damages in an amount to be proved a trial;

F.  That the Court find that Defendants have misappropriated Domus's trade secrets in violation of the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* and the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701 *et seq.* and, consequently, to enjoin Defendants from further misappropriation of Domus's trade secrets and/or to award damages (including exemplary damages equal to twice the actual damages) against the Defendant Partners jointly and severally and in favor of the Plaintiff Partners in an amount to be proved at trial;

G.  That the Court find that Defendant Cravens and Defendant Cumby have willfully infringed Domus's trademark in violation of 15 U.S.C. § 1125 *et seq.*, issue a preliminary and permanent injunction pursuant to 15 U.S.C. § 1116 to prevent further violation of Domus's rights in the trademark, declare that Defendant Cravens and Defendant Cumby are directly liable for trademark infringement, and award Domus damages in the amount of the Defendant Partners'

profits from the unauthorized use of Domus's trademark, three times Domus's actual damages, the costs of this action, and Domus's reasonable attorneys' fees;

H.      That the Court find that Defendants converted Domus's property in violation of Tennessee law and, consequently, award damages against the Defendant Partners jointly and severally and in favor of the Plaintiff Partners in an amount to be proved at trial;

I.      That the Court find that Defendants participated in one or more civil conspiracies and, consequently, award damages against the Defendant Partners jointly and severally and in favor of the Plaintiff Partners in an amount to be proved at trial;

J.      That the Court find that the Plaintiff Partners are the prevailing party and that Defendants are jointly and severally liable for Plaintiffs' reasonable attorneys' fees and expenses pursuant to 18 U.S.C. § 1836(b)(3)(D), Tenn. Code Ann. § 47-25-1705, and other law;

K.      That the costs of this action be taxed to Defendants; and

L.      That the Court award such other and further relief that the Court deems appropriate.


Dated:        June 20, 2018                     Respectfully submitted,


                                                /s/  Ryan T. Holt                              _
                                                Ryan T. Holt (No. 30191)
                                                Andrea J. Sinclair (No. 33544)
                                                SHERRARD ROE VOIGT & HARBISON, PLC
                                                150 3rd Avenue South, Suite 1100
                                                Nashville, Tennessee 37201
                                                (615) 742-4200
                                                (615) 742-4539 (facsimile)
                                                rholt@srvhlaw.com
                                                asinclair@srvhlaw.com

                                                *Attorneys for Plaintiffs Domus Development LLC, MMA Investments LLC, and Sonnyman, LLC*

27